NO. 26-1211

IN THE

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

JOHN DOE,

*Plaintiff-Appellant*,

*v*.

FURMAN UNIVERSITY,

*Defendant-Appellee*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT GREENVILLE

---

## REPLY BRIEF OF APPELLANT

---


Joshua Snow Kendrick
KENDRICK & LEONARD, P.C.
Post Office Box 6938
Greenville, SC 29606
(864) 760-4000
Josh@KendrickLeonard.com

*Counsel for Appellant*

# TABLE OF CONTENTS

***Page(s)***


TABLE OF AUTHORITIES .................... ii

INTRODUCTION .................... 1

ARGUMENT .................... 3

1. Doe adequately pled his Title IX claims. .................... 3
   a. Furman's defense of the judgment primarily rests on documents the district court excluded from the Rule 12(b)(6) record. .................... 3
   b. Furman is asking the Court to resolve conflicting inferences against the plaintiff. .................... 5
   c. Furman argues alternative grounds that were not the basis of the judgment and are contradicted by the district court's own reservations. .................... 7
   d. *Neal* does not impose a pleading-stage requirement of bias allegations "at every level," but even if it did, Doe made the argument below. .................... 8
   e. Doe has adequately pled a selective enforcement claim. .................... 9
2. Doe's breach of contract claim should not have been dismissed. .................... 10
   a. The record reflects Doe adequately made the notice argument in the district court. .................... 10
   b. Consistent with the legal framework used by the district court, the Fair Treatment provision's notice promise makes the Policy enforceable. .................... 11
   c. Doe has alleged definitive promises of specific treatment in specific situations. .................... 12
3. Doe's negligence claim should not have been dismissed. .................... 13

CONCLUSION .................... 14

CERTIFICATE OF COMPLIANCE .................... 15

CERTIFICATE OF SERVICE .................... 16

## TABLE OF AUTHORITIES

### Cases

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212 (4th Cir. 2004) ........ 3

*Doe v. Citadel*, 2022 U.S. Dist. LEXIS 127707 (D.S.C. July 18, 2022)........ 9

*Doe v. Univ. of N.C. Sys.*, 133 F.4th 305 (4th Cir. 2025)........ 9

*Fleming v. Borden, Inc.*, 450 S.E.2d 589 (S.C. 1994)........ 11, 12

*Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir. 2016) ........ 1, 3, 4

*Hendricks v. Clemson Univ.*, 578 S.E.2d 711 (S.C. 2003)........ 12, 14

*Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694 (S.C. 2005) 13

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999)........ 11, 12

*Kadel v. N.C. State Health Plan for Teachers & State Emps.*, 12 F.4th 422 (4th Cir. 2021)........10-11

*Kashdan v. George Mason Univ.*, 70 F.4th 694 (4th Cir. 2023) ........ 6

*King v. PYA/Monarch, Inc.*, 453 S.E.2d 885 (S.C. 1995) ........ 2, 11, 12

*Neal v. E. Carolina Univ.*, 53 F.4th 130 (4th Cir. 2022)........ 8, 9

*Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268 (4th Cir. 2019) ........ 5

*Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230 (4th Cir. 2021)........ 7

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ........ 2, 9, 10

### Rules

Fed. R. Civ. P. 12(b)(6)........ 1, 3

## INTRODUCTION

Furman's brief asks this Court to affirm a Rule 12(b)(6) dismissal by doing three things a court reviewing a Rule 12(b)(6) dismissal may not do: (1) credit the contents of documents the district court excluded from the pleading-stage record; (2) resolve competing factual inferences against the pleader; and (3) defend the judgment on grounds the district court expressly declined to reach. Furman also dismisses as "waived" arguments that appear on the face of the record below.

The district court held that the investigation reports and outcome letters were not integral to the Complaint and refused to consider them. JA007–009. Furman did not challenge that ruling. Yet its statement of facts and its merits argument quote those same documents at length: the hearing board's fuller credibility rationale, its assurance that it "gave no weight" to pattern evidence, and the investigators' account of Doe's written statement. See Resp. Br. 14-17, 25 n.7, 32[1] (citing JA149–171, JA178–179, JA212–223). Those are Furman's own exculpatory characterizations, authored by Furman, offered to contradict the Complaint's well-pleaded allegations. Under *Goines v. Valley Community Services Board*, 822 F.3d 159, 167–69 (4th Cir. 2016), that is what a defendant may not do at the pleading stage, as Doe argued below, JA226–228, and as the district court agreed, JA008–009.

Furman's waiver arguments are also contradicted by the record. Furman argues that Doe never argued below that the Policy could be

[1] Cites to the Response Brief are to the pages listed by the Court in the header.

modified only with notice and never argued below that the flawed hearing infected the appellate review, Resp. Br. 41. Doe's opposition argued both. It argued, citing *King v. PYA/Monarch*, 453 S.E.2d 885 (1995), that the alleged contract "can be modified with notice to the performing party" and "cannot be changed without that notice." JA233–234. It further argued that "the appeals process was merely an extension of the flawed process in the first hearing." JA231. A party who has preserved a claim may in any event "make any argument in support of that claim" on appeal. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). Here, the arguments were made.

The judgment should be reversed and the case remanded.

## ARGUMENT

### 1. Doe adequately pled his Title IX claims.

#### a. Furman's defense of the judgment primarily rests on documents the district court excluded from the Rule 12(b)(6) record.

The district court considered the Complaint, the Sexual Misconduct Policy, and the Student Handbook, but nothing else. Applying *Goines*, it held that "the Investigation Reports and the Outcome Letters… are not integral to Plaintiff's claims and thus should not be considered at this stage of litigation." JA008. Furman did not cross-appeal or otherwise challenge that ruling, and this Court's review of a Rule 12(b)(6) dismissal is confined to the materials properly before the district court. Furman's arguments rely on the excluded documents: the C.S. outcome letter's expanded credibility narrative (Resp. Br. 15-16, quoting JA178); the board's statement that it "did not give any weight to pattern evidence" (Resp. Br. 16, 25 n.7, quoting JA179); the G.N. outcome letter's account of its own reasoning (Resp. Br. 16-17, quoting JA217–218); and the investigation reports' characterization of Doe's participation (Resp. Br. 14-15, quoting JA156–157).

Furman's footnoted theory for reintroducing these materials claims that the Court may consult them to declare the Complaint's contrary allegations "not well pleaded," Resp. Br. 14 n.3 (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212 (4th Cir. 2004)). But this is at odds with *Goines*. A plaintiff's reference to, or even reliance on, a document does not adopt the document's contents as true, particularly where the document is a "unilateral document" that "may reflect the defendant's

version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff." *Goines*, 822 F.3d at 168. This is consistent with the district court's finding that the documents were not integral to the complaint.

Doe's Complaint does not rest on the truth of the outcome letters. Rather, it rests on the unfairness of the process that produced them. It further disputes their accuracy as Doe argued below in opposing the motion to dismiss. JA226–229. Treating a hearing board's self-exonerating statements as conclusive at the pleading stage would convert every carefully drafted outcome letter into a guaranteed dismissal on the pleadings, which *Goines* forecloses.

Furman answers the pattern-evidence allegation by quoting the board's statement that it disregarded that evidence, Resp. Br. 25 n.7, and answers the credibility-asymmetry allegation by quoting the board's fuller explanation, Resp. Br. 15-16 & 26 n.8. If the documents are excluded, as the district court held, then the Complaint's allegations are unrebutted and must be taken as true: the board excused C.S.'s inability to recall as "understandable given her level of intoxication" while holding claimed inconsistencies against Doe, Compl. ¶¶ 28, 41(a)–(c) (JA039–041)[2]; pattern evidence concerning the then-unresolved G.N. allegations was placed before the board that decided the C.S. matter, over Doe's objection, Compl. ¶ 29

[2] Appellant cites to both the JA and the specific paragraphs where appropriate to avoid the Court having to determine which portion of each JA stage is referenced.

(JA040); and Doe was denied any avenue to place his subsequent exoneration before the panel reviewing the adverse finding, Compl. ¶¶ 35–38, 43(f) (JA040–042).

### b. Furman is asking the Court to resolve conflicting inferences against the plaintiff.

Furman's brief argues that the same process found Doe not responsible in the G.N. matter, so the responsible finding in the C.S. matter cannot plausibly reflect sex bias. Resp. Br. 8-9. At this stage the question is not whether Furman's reading of the split outcome is reasonable, but whether it is the *only* reasonable reading. The two matters were decided by separately convened hearing boards, Compl. ¶ 31 (JA040), and the not-responsible finding in the second is equally consistent with Doe's theory. It demonstrates that when the allegations were finally tested, the same accused student, of the same sex, was exonerated, which casts doubt on the accuracy of the first outcome rather than validating it. The exonerating allegations were placed before the first board as "pattern evidence." Compl. ¶¶ 29, 31–32, 38 (JA040–041). Choosing between those competing inferences is a merits exercise. At this stage, any inference must be viewed in the light most favorable to Doe. *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019).

Furman makes the same error in its treatment of the individual allegations. Furman says the credibility asymmetry is explained by "corroborating evidence," Resp. Br. 26 n.8, citing the excluded outcome letter. It argues that the investigators' "repeatedly declined" notation was

accurate and neutral, Resp. Br. 32-33, characterizing the excluded investigation report against the Complaint's express allegation that the notation "was untrue." Compl. ¶ 43(b) (JA042).

Furman further argues the gendered framing of the University's Title IX materials had no effect on the proceedings, which is a factual assertion about causation that is not supported by the record. Each response supplies an alternative explanation, which is not allowed at the pleading stage, where the plaintiff's explanation is equally plausible.

*Kashdan* does not require more. The complaint there offered *only* "information and belief" generalities untethered to the plaintiff's own proceeding. *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701–02 (4th Cir. 2023). *Kashdan* does not require proof at the pleading stage. In fact, it specifically quotes that a plaintiff only needs to allege: "(1) [he] was subjected to 'a procedurally flawed or otherwise flawed proceeding'; (2) which 'led to an adverse and erroneous outcome'; and (3) involved 'particular circumstances' that ***suggest*** 'gender bias was a motivating factor behind the erroneous finding.'" *Id.* at 701 (emphasis added).

Doe's two "information and belief" allegations, Compl. ¶ 43(c)–(d) (JA042), are a small part of his pleading, which alleges proceeding-specific irregularities. It references the pattern-evidence submission over objection, the credibility asymmetry, the compressed timeline the district court itself questioned, and the appeal panel's structural inability to consider the exoneration. It then references the gendered context in which they occurred, including the Title IX Coordinator's differential treatment of Doe and the

orientation of the University's programming and partnerships. Compl. ¶¶ 41, 43 (JA041–042). The combination is what *Sheppard*'s "articulable doubt" plus bias-indicia framework contemplates at the pleading stage. *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235–37 & n.6 (4th Cir. 2021).

At this stage, the "information and belief" allegations are not fatal to the complaint and were not proper support for its dismissal.

**c. Furman argues alternative grounds that were not the basis of the judgment and are contradicted by the district court's own reservations.**

Furman argues that Doe failed to plead a flawed proceeding or an erroneous outcome. Resp. Br. 23-27. The district court did not hold this. It dismissed Doe's case on the causation prong alone, while expressing its own misgivings about the process. It "certainly questions the timeline of events in regard to fairness to Plaintiff in fully presenting a defense to the allegations against him in the C.S. hearing." JA022. And it "questions the general equity of Defendant's appeals process regarding new evidence," acknowledging that the Policy "raises serious questions of fairness generally" because it names new evidence as a ground for appeal while providing "no avenue to raise such evidence" outside a strict seven-day window. JA023; see JA020–021.

A court that doubts the fairness of the proceeding has acknowledged that the first two prongs are at least plausibly satisfied. Furman's contrary argument depends on the excluded documents, and on treating credibility determinations as categorically exempt from challenge, a proposition drawn from district-court decisions addressing complaints that alleged *nothing but*

disagreement with credibility findings. Doe's Complaint alleges much more. Compl. ¶¶ 41(a)–(i) (JA041–042).

### d. *Neal* does not impose a pleading-stage requirement of bias allegations "at every level," but even if it did, Doe made the argument below.

Furman's causation-break argument, Resp. Br. 38-42, defends a holding the district court never made. The court stated that it "need not reach Defendant's arguments regarding Defendant's appellate review," observing only in passing that the claims would "likely" fail on that ground. JA024–025 n.6. An observation the district court did not include in a holding does not support affirmance, particularly where the observation is wrong.

*Neal v. East Carolina University*, 53 F.4th 130 (4th Cir. 2022), was a summary-judgment decision under the ADA. It held, after the parties had the opportunity to conduct discovery and build a record, that a review panel's *independent* evaluation severed the causal chain. *Id*. at 152. Nothing in *Neal* results in a pleading rule that a Title IX plaintiff must, before discovery, allege particularized bias facts about every individual who touched the decision. Such a requirement would make pleading-stage dismissal automatic in any system with layered review. And *Neal*'s premise of independence is exactly what the Complaint alleges did not happen. The appeal panel reviewed a record shaped by the flawed hearing, under a rule that barred it from considering the single most probative piece of new evidence, which was Doe's exoneration in the companion matter. Compl. ¶¶ 35–38, 43(f) (JA040–042). A review process that structurally cannot review the evidence of error does not fix the error.

Furman's waiver argument that Doe "did not raise" the infected-appeal theory below, Resp. Br. 41, is contradicted by the record. Doe's opposition argued that "the appeals process was merely an extension of the flawed process in the first hearing," that nothing supported a finding of independence at the pleading stage, and that *Neal* and *Doe v. Citadel,* 2022 U.S. Dist. LEXIS 127707 (D.S.C. July 18, 2022), are distinguishable on that basis. JA231. The Complaint pleads the underlying facts. Compl. ¶¶ 35–38, 43(f) (JA040–042). There is nothing left to waive. But in any event a preserved claim carries with it every argument in its support. *Yee*, 503 U.S. at 534.

Furman's deference cases do not change this. Deference is owed to adjudicators "whose familiarity with the pertinent circumstances is shown to be matched by their fairmindedness." Resp. Br. 40 (quoting *Doe v. Univ. of N.C. Sys.*, 133 F.4th 305, 317 (4th Cir. 2025)). Whether fairmindedness has been "shown" is the disputed question in this case. At the pleading stage, the Complaint's contrary allegations must be taken as true.

**e. Doe has adequately pled a selective enforcement claim.**

Doe's selective-enforcement claim does not rest on comparing himself to complainants or witnesses. It rests on the allegation that the decision to initiate and send both matters to a formal hearing, including the G.N. matter, on allegations the Complaint describes as so unbelievable they should never have reached a hearing, and which the second board ultimately rejected, reflects an institutional practice of crediting female accusers and charging male respondents regardless of evidentiary support. Compl. ¶¶ 32–33, 48–

52 (JA040, JA043). The exoneration is well-pleaded, non-conclusory factual support for the allegation that the University initiated and maintained charges without credible evidentiary support, and the plausible explanation pleaded for that decision is the respective sexes of accuser and accused. Compl. ¶ 33 (JA040).

### 2. Doe's breach of contract claim should not have been dismissed.

#### a. The record reflects Doe adequately made the notice argument in the district court.

Furman argues Doe "did not raise this argument in the underlying district court action." Resp. Br. 49. This is contradicted by the record. Doe's opposition responded directly to Furman's contention that "the unilateral agreement can be changed at any time" by answering that "[b]oth are incorrect under South Carolina law," that "[t]he policies at issue meet the definition of a unilateral contract," and that under *King v. PYA/Monarch*, "such an agreement can be modified with notice to the performing party. It cannot be changed without that notice." JA233–234. That is an argument that this Policy could be modified only with notice, addressed to this contract, supported by the controlling authority.

The only arguable new argument on appeal is a citation to the Handbook sentence at JA139 that supports the argument made below. Pointing to record text in support of a preserved position is not improper. "Once a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee*, 503 U.S. at 534. *Kadel* addresses new *issues*; the

enforceability of the Policy was the issue, it was argued by both sides, and it was decided. *Kadel v. N.C. State Health Plan Teachers & State Emples.,* 12 F.4th 422, 430 (4th Cir. 2021). There is no forfeiture to excuse. But even if there were, a pure question of law concerning the legal effect of undisputed record text, on de novo review, would warrant reaching it.

**b. Consistent with the legal framework used by the district court, the Fair Treatment provision's notice promise makes the Policy enforceable.**

The district court explained that under South Carolina law an agreement with a unilateral change-in-terms provision is unenforceable only when the provision operates "without limiting the empowered party in some way, *such as by requiring notice be given to the other party*." JA031 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999); *Fleming v. Borden, Inc.*, 450 S.E.2d 589, 594 (S.C. 1994); *King*, 453 S.E.2d at 888). The court then dismissed on the premise that "the Student Handbook and the Policy may be amended *without notice*." JA032. For that premise the court quoted a single sentence: "The University reserves the right to amend its rules, policies, and procedures at any time." Id.

But that sentence should not be considered in a vacuum. The Handbook's "Fair Treatment" provision opens with a promise: "The University seeks to treat Students fairly in the resolution of alleged Student Conduct Code violations. Accordingly, the University *will substantially adhere to its published policies and practices unless reasonable Notice is given prior to alteration….*" JA139. Read together, as contract provisions must be, the specific promise qualifies the general reservation: the University

may amend at any time, but until reasonable notice of an alteration is given, it is bound to substantially adhere to the published Policy.

The power to amend on notice is exactly the "limit[] on the empowered party" the district court's own framework identifies as preserving enforceability. JA031. *Hooters* proves the point in reverse: what doomed the Hooters rules was the reserved power to change them "without notice," even mid-proceeding. 173 F.3d at 939. The Fair Treatment provision promises the opposite. At minimum, the interplay between the two sentences of a single provision is ambiguous and ambiguity in a document drafted entirely by the University is construed against it, and in Doe's favor at the pleading stage.

Furman disregards this structure. Its footnote claims the reservation sentence "has no qualification" and accuses Doe of "cherry-pick[ing]" the notice sentence. Resp. Br. 49 n.10. Furman excises one sentence from a two-sentence provision and reads it in isolation. Its observation that no South Carolina court has yet held a student handbook enforceable, Resp. Br. 47-48, reverses the proper inquiry: *Hendricks* recognizes aspects of the university-student relationship can be contractual. *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 716 (S.C. 2003). The question is what the South Carolina Supreme Court's handbook doctrine from *Fleming* and *King* dictates when applied to these documents. Furman's citations construing North Carolina law answer a different question under a different doctrine.

**c. Doe has alleged definitive promises of specific treatment in specific situations.**

Furman's fallback argument is that the breached provisions are "aspirational," Resp. Br. 50-52. This stretches *Hessenthaler* past its holding. *Hessenthaler* involved a freestanding general nondiscrimination statement. The court contrasted such statements with provisions that are "definitive in nature, promising specific treatment in specific situations," which *are* enforceable. *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 697–98 (S.C. 2005).

The Policy is a lengthy procedural code promising exactly that: mandatory investigation procedures, interview and evidence-submission rights, hearing and questioning procedures, a defined standard of proof, a defined pattern-evidence rule, defined confidentiality obligations, and defined appeal rights including new evidence as an enumerated ground of appeal. Each procedure is promised to identified persons in an identified situation. JA100–114; see JA020–021. A promise that investigators appointed to a specific complaint will conduct a "thorough and impartial investigation" of that complaint, Compl. ¶ 25 (JA039), is very different from a general statement that all decisions are made without regard to protected status. The Complaint alleges breaches of these specific procedural promises. Compl. ¶¶ 63–64 (JA045).

### 3. Doe's negligence claim should not have been dismissed.

Doe rests on his opening brief but adds two points. First, the district court dismissed on the ground that the University's voluntary undertakings produced only "economic injuries." JA028–029. But the Complaint pleads more than economic loss: the finding "creates a permanent record of sexual

assault against Plaintiff," Compl. ¶ 30 (JA040), in an environment where the University stood by as disparaging posts about Doe circulated on campus social media. Compl. ¶¶ 23–24 (JA039). Doe further argued the recognized, calculable character of reputational injury below. JA232.

Second, *Hendricks* declined to find a duty where the university's undertaking of general academic advising was directed at no particular commitment to the plaintiff. In this case, the University's own Coordinator appointed investigators specifically charged to conduct a "thorough and impartial investigation" of the allegations against Doe, Compl. ¶ 25 (JA039), an undertaking that, once voluntarily made, must be performed with due care.

## CONCLUSION

For these reasons and those stated in the opening brief, the judgment should be reversed and the case remanded for further proceedings.

Respectfully submitted,

*/s/ Joshua Snow Kendrick*
Joshua Snow Kendrick
KENDRICK & LEONARD, P.C.
7 Mills Avenue (29605)
P.O. Box 6938, Greenville, SC 29606
(864) 760-4000 ·
Josh@KendrickLeonard.com

*Counsel for Appellant John Doe*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Rule 32(f), this document contains ***3432*** words as calculated by Microsoft Word. This document complies with the typeface and type-style requirements of Rule 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Georgia Pro.

*/s/ Joshua Snow Kendrick*

## CERTIFICATE OF SERVICE

I certify that on ***September 2, 2026***, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Joshua Snow Kendrick*